646 S.E.2d 445

**The STATE, Respondent,**

v.

**William Smoak FAIREY, Jr., a/k/a Doak Fairey, Appellant.**

No. 4233.

Court of Appeals of South Carolina.

Heard March 7, 2007.

Decided April 16, 2007.

Rehearing Denied June 28, 2007.

Appellate Defender Eleanor Duffy Cleary, of Columbia and C. Bradley Hutto, of Orangeburg, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

HUFF, J.

William Smoak Fairey was tried in absentia and without counsel for the charge of obtaining goods and monies under false pretenses. A jury found Fairey guilty, and the judge sentenced him to eight years in prison, suspended to five years service and four years probation. On motion to vacate sentence and for a new trial, the judge reduced Fairey's sentence to eight years, suspended to four years service and four years of probation with a special condition to make restitution. Fairey appeals arguing: (1) the trial court erred in holding trial in his absence, because he was not given proper notice of his trial or warned of possible trial in absentia; (2) the trial judge erred in denying his motion for a new trial because he was not cautioned against proceeding *pro se* and thereby wrongfully denied the right to counsel; and (3) the trial court erred in refusing to give him access to grand jury documents. We affirm.

## FACTS

In June 1997, Fairey contracted with Scott Rudisill, a small business owner, to develop and install a computer system for Rudisill's business and personal records. On July 7, 1997, Fairey approached Rudisill for a $25,000 loan. Fairey told Rudisill that he was offered a job with the White House as a liaison to President Bill Clinton, but he had to overnight $25,000 to secure the position. Fairey explained that the money would be immediately refunded once he began his new position and promised to immediately return the money to Rudisill. Rudisill agreed to loan the money and had Fairey sign a promissory note for $25,000 with interest on unpaid principal, at a rate of ten percent. The note indicated all monies were to be paid on October 7, 1997. Before October 7, Rudisill called Fairey a couple times regarding the money; each time Fairey indicated that he would have no problems repaying the loan. However, Fairey did not repay Rudisill on

October 7, and when Rudisill contacted Fairey, he said that he would deposit the money in Rudisill's account but never did.

On January 26, 1998, Fairey was served with an arrest warrant for obtaining goods and monies under false pretenses. Following Fairey's arrest, Fairey signed a bond sheet, wherein under the heading, "Acknowledgment By Defendant," it indicated he understood a trial would proceed in his absence if he failed to appear. On July 23, 1998, notice was sent to Fairey's attorney, Richard Weldon, that the charge against Fairey had been dismissed.

On June 23, 2001, Fairey was indicted by a grand jury for the same charge of obtaining goods and monies under false pretenses. In June 2002, Weldon made a motion to be relieved as counsel for Fairey. Weldon cited substantial disagreement with Fairey regarding trial strategy, Fairey's failure to pay Weldon for his services, and Fairey's desire to proceed *pro se* as reasons for withdrawal. Weldon additionally stated Fairey was given reasonable warning of Weldon's intent to withdraw if Fairey did not pay Weldon for his services. On July 23, 2002, the trial judge granted Weldon's motion to withdraw as counsel. The order stated, "[i]t appears to the court that there is just cause for granting the motion and that Doak Fairey consents to the requested withdrawal as signified by the signature of Doak Fairey on the attached consent form." Also in the order, Fairey was instructed that he needed to keep the court informed as to where papers should be served, had the obligation to retain counsel if he desired, and had the responsibility to prepare for trial.

On August 22, 2002, Fairey informed the solicitor of a change of address:

> Pursuant to the Consent Order regarding *"keeping the court informed as to where notices, pleadings, and other papers may be served,"* I am informing the court of my new address. All notices, pleadings and other papers should be delivered to:
>
> Doak Fairey
> 31545 Vaca Drive
> Castaic, California 91384
>
> This address change is valid immediately

So that I might adequately prepare for trial, please assure that any and all future correspondence is sent to this address.

On September 8, 2002, after being sent a subpoena to his former Florida address, Fairey informed the court and solicitor, once again, that the California address was the correct address to send all correspondence. This letter stated:

Today, I received VIA FAX a copy of a subpoena relating to my case. This document was sent to my old address in Sarasota, Florida.

In my previous correspondence (copy attached), I informed you and the court of my address change. I followed the procedure as spelled out in your correspondence of 7/30/02. You have chosen to ignore the Rule, and your own written procedure, and failed to properly send documents to me at my address.... Please assure that all correspondence and information for trial is sent to my new address:

Doak Fairey

31545   Vaca Drive

Castaic, CA 91384

On March 10, 2003, Fairey made a motion to quash the indictment. In his motion to quash, Fairey listed his addresses as:

| 31545 Vaca Drive | 5629 Boulder Blvd |
| Castaic, CA 91384 | Sarasota, FL 34233 |
| 941-284-5896 | (temporary address) |

The motion was signed, *"Defendant pro se."* (emphasis in original). The motion listed as reasons to quash the indictment: (1) the State failed to provide defendant with a preliminary hearing; (2) the State failed to produce documents related to his previously dismissed charge; and (3) the State failed to produce documents relating to the 2001 grand jury indictment.

A hearing on the motion to quash was held on March 24, 2003. Fairey appeared at the hearing without counsel and proceeded to represent himself. Fairey complained that the State possessed documents relating to the case that was originally dismissed in July 1998. Fairey "requested memorialization of the Grand Jury proceedings in this case" and

explained that he was "trying to determine ... exactly what the Grand Jury saw, what they heard" because of the belief that they could not review evidence relating to the previously dismissed case. Fairey based his argument on an expungement statute, S.C.Code § 17–1–40, which requires the expungement of certain documents after a charge is dismissed. In response the State noted that Fairey was directly indicted by the grand jury after the earlier dismissal of the charge, and "[t]here is no evidence that I could produce to him of the Grand Jury proceeding other than a certified copy of an indictment." Further, the State explained that the process of destroying documents provided for in the expungement statute was not an automatic process once a case is dismissed. Rather, a defendant must file a motion to have his record expunged and the court sign an order directing the State to destroy the documents relating to the dismissed case. During the hearing Fairey made a motion to dismiss and afterward filed the motion to dismiss with the court, indicating Fairey as a *pro se* defendant and listing a Florida address.

On March 31, 2003, the judge denied Fairey's motion to quash on the following reasons: (1) Fairey's right to a preliminary hearing was extinguished by virtue of the fact his case had been presented to the Grand Jury; (2) Fairey's reliance on a expungement statute in regard to the expungement of the 1998 documents was misplaced in this case: (3) failure to comply with discovery was not remedied through the quashing of an indictment; and (4) there was no merit to Fairey's allegation regarding the validity of the Grand Jury proceeding. The judge also reinstated Fairey's previous bond. The order notified Fairey: "[t]he defendant is required to appear at the call of his case by the State and shall keep the Court and the State advised of any changes in his address." The court order was sent to Fairey at the temporary Florida address provided in the motion to quash.

The solicitor's office subpoenaed Fairey to appear in the Conway Judicial Building from July 9 through 23, 2004. The subpoena, dated June 21, 2004, listed Fairey's California address and a Myrtle Beach address. The case was called on July 21, 2004, but Fairey did not appear. At the hearing, the administrative assistant for the solicitor's office testified the subpoena was sent to: (1) the California address because it

was the last official address provided by Fairey in his August 22 and September 8 letters; and (2) the Myrtle Beach address because it was the address provided in Fairey's original bond form. After the solicitor presented evidence that Fairey received notice of the date and time of his trial, the court found that the solicitor made an adequate showing Fairey received notice and the trial proceeded in Fairey's absence.

On July 21, 2004, the trial court sentenced Fairey to eight years imprisonment, suspended to five years service and four years probation. Fairey was also fined $128.75 and ordered to pay restitution of $25,000.

Fairey was apprehended in Florida and brought in for sentencing on October 21, 2004. Fairey's counsel moved for a vacation of his conviction and new trial based on the lack of notice and because Fairey was tried without counsel. The judge denied the motion finding Fairey adequately and legally waived his right to counsel and his right to be present at the trial. The judge then reduced Fairey's sentence to eight years, suspended to four years service and four years probation with a special condition to make restitution to Rudisill in the amount of $25,000. This appeal follows.

## LAW/ANALYSIS

### I. Notice and Trial in Absentia

Fairey argues that the trial court erred in holding his trial in his absence, where the State failed to show: (1) he received notice of his right to be present; and (2) he was warned the trial would proceed in his absence. We disagree.

Although the Sixth Amendment of the Constitution guarantees the right of an accused to be present at every stage of his trial, this right may be waived. *State v. Bell*, 293 S.C. 391, 401, 360 S.E.2d 706, 711 (1987); *Ellis v. State*, 267 S.C. 257, 260, 227 S.E.2d 304, 305 (1976). Rule 16 of the South Carolina Rules of Criminal Procedure provides:

[A] person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence upon a finding by the court that such person has received notice of his right to be present and that a warning

was given that the trial would proceed in his absence upon a failure to attend the court.

Rule 16, SCRCrimP.

However, a waiver of such an important right is permitted only in limited circumstances. *City of Aiken v. Koontz,* 368 S.C. 542, 547, 629 S.E.2d 686, 689 (2006). Therefore, before a defendant may be tried in absentia, the trial court must determine a defendant voluntarily waived his right to be present at trial, making findings of fact on the record that the defendant (1) received notice of his right to be present and (2) was warned that the trial would proceed in his absence. *Id.*

### A. Notice

"Notice of the term of court for which the trial is set constitutes sufficient notice to enable a criminal defendant to make an effective waiver of his right to be present." *City of Aiken v. Koontz,* 368 S.C. 542, 547, 629 S.E.2d 686, 689 (Ct.App.2006). However, if the record does not reveal that the defendant was afforded notice of his trial, the resulting conviction in absentia cannot stand. *State v. Jackson,* 290 S.C. 435, 436, 351 S.E.2d 167, 167 (1986).

In the present case, the solicitor subpoenaed Fairey to appear in court from July 9 through July 23, 2004. Notice was sent to Fairey at both the California address he forwarded to the solicitor's office in the August 22 and September 8 letters and the North Myrtle Beach address provided in the reinstated bond. Fairey failed to appear in court when his name was called. The judge heard the solicitor on notice to Fairey and made a determination on the record that: (1) the State made an adequate showing that the defendant was placed on notice of the date and time of his trial; (2) failure of the defendant to appear was willful; and (3) the defendant had "notice that he had a right to be present and that if he wasn't present he would be tried in his absence."

Fairey argues that since the solicitor "inexplicably" did not send notice of his trial to Florida, but rather to California, Fairey did not receive notice of his right to be present. Fairey further bolsters his argument claiming that because the solicitor "had been sending legal mail to [Fairey] in Florida since the March 2003 hearing," the solicitor should

have sent notice of his trial to his Florida address. However, the record indicates that Fairey's permanent address for service of notice was his California address, whereas the Florida address was only a "temporary address" used by Fairey during a period in 2003.

On July 23, 2002, when the court granted Fairey's counsel's motion to withdraw, the court warned Fairey that he had "the burden of keeping the court informed as to where notices, pleadings and other papers may be served." At that time it was noted that service of notice would be sent to Fairey at his home address in Sarasota, Florida. However, in the August 22 letter Fairey informed the solicitor of a change of address, listing his California address. And again, in the September 8 letter Fairey informed the court and solicitor that the California address was the correct address to send all correspondence.

Fairey never sent a letter to the court or solicitor to inform them of a change of address from the California address to the Florida address as he did in his August 22 and September 8 letters. Thus, the last official, permanent address provided to the court and solicitor by Fairey was his California address. Merely because Fairey listed a "temporary address" on his motion to quash and motion to dismiss over a year prior to his trial does not notify the court and solicitor of a change of address so as to direct where all notices, pleadings and other papers may be served. Therefore, notice of Fairey's trial was properly sent to California, and as such, Fairey was placed on notice of his right to be present at his July 2004 trial.

## B. Trial in Absentia

Further, Fairey contends he was not warned his trial would proceed in his absence. A bond form that provides notice that a defendant can be tried in absentia may serve as the requisite notice. *City of Aiken v. Koontz*, 368 S.C. 542, 548, 629 S.E.2d 686 689–90 (2006); *State v. Goode*, 299 S.C. 479, 385 S.E.2d 844 (1989).

In *Aiken v. Koontz* the defendant was arrested for driving with a suspended license, and when he posted bond the day after his arrest, he was provided an order specifying methods and conditions of release. 368 S.C. at 547–48, 629 S.E.2d at

689. The defendant also signed a form entitled, "Acknowledgement by Defendant," which read "I understand and have been informed that I have a right and obligation to be present at trial and should I fail to attend the court, the trial will proceed in my absence." *Id.* at 548, 629 S.E.2d at 689. Thus, this court held that Koontz was warned a failure to appear would result in a trial in his absence and that he understood the warning and obligation by signing the "Acknowledgement." *Id.*

In January 1998, Fairey signed a bond sheet wherein under the heading, "ACKNOWLEDGEMENT BY DEFENDANT," it reads: "I understand and have been informed that I have a right and obligation to be present at trial and should I fail to attend the court, the trial will proceed in my absence." As in *Koontz,* Fairey's signature on the "Acknowledgement" served as a warning that he would be tried in his absence, and therefore, Fairey understood such warning.

Relying on *State v. Goode,* Fairey contends because the indictment, for which the bond was signed, was dismissed, it was thereby extinguished and could not serve as notice to appear. In *State v. Goode* the defendant was arrested for breaking into a motor vehicle and released on bond. 299 S.C. at 480, 385 S.E.2d at 845. He signed a bond form that provided him notice that his trial would proceed in his absence if he failed to appear. *Id.* He failed to appear and a bench warrant was issued. He was subsequently indicted for both breaking into a motor vehicle and grand larceny and was tried in his absence for both charges. *Id.* at 481, 385 S.E.2d at 845. The supreme court held that Goode did not have adequate notice that he would be tried for the newly indicted crime, grand larceny, in his absence since the crime was not listed on the bond signed by Goode. *Id.* at 842–43, 385 S.E.2d at 846. However, because Goode signed the bond form related to the charge of breaking into a vehicle the court held that he had notice he would be tried for that crime in his absence. *Id.* at 842, 385 S.E.2d at 846.

While Fairey's original indictment was dismissed, he was directly indicted for the *same* crime on June 26, 2001, and the 1998 bond was reinstated on July 23, 2002 by court order.

Therefore, the 1998 bond was in effect and thereby served as notice to Fairey that he would be tried in his absence.

## II. Right to Counsel

■ Fairey also argues the trial judge erred in denying his motion for a new trial because he was denied the right to counsel. We disagree

■ "The Sixth Amendment guarantees criminal defendants a right to counsel." *State v. Gill,* 355 S.C. 234, 243, 584 S.E.2d 432, 437 (Ct.App.2003) (citations omitted). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, this right may be waived. *State v. Gill,* 355 S.C. at 243, 584 S.E.2d at 437. This court has explained that "a defendant may surrender his right to counsel through (1) waiver by affirmative, verbal request; (2) waiver by conduct; and (3) forfeiture." *State v. Thompson,* 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct.App.2003).

■ In this case we confine our analysis to the question of whether Fairey waived this right by his conduct. A defendant may waive his right to counsel through his conduct. *Id.* at 263, 584 S.E.2d at 135 (citations omitted). Deliberate and dilatory conduct on behalf of a defendant can suffice to waive the right to counsel. *State v. Pride,* 372 S.C. 443, 641 S.E.2d 921 (2007) (Shearouse Adv. Sh. No. 7 at 69); *see also State v. Jacobs,* 271 S.C. 126, 128, 245 S.E.2d 606, 608 (1978) (holding a waiver of the right to counsel can be inferred from a defendant's actions).

In support of his argument, Fairey relies on our decision in *Thompson.* However, neither *Thompson* nor our more recent case of *State v. Roberson,* 371 S.C. 334, 638 S.E.2d 93 (Ct.App. 2006) requires reversal of Fairey's conviction and sentence. Rather, we are guided by this court's recent decision in *State v. Pride.* As discussed in *Pride,* there is a crucial difference between the facts in Pride's and Fairey's cases and those of *Thompson* and *Roberson.*

In *Pride*, the defendant was indicted for possession of crack cocaine with intent to distribute (PWID) and PWID within proximity of a school. On the first day of the term of court for which Pride was originally scheduled to go to trial, a public defender, William All, was appointed to represent Pride. On that same day Pride was also represented by a private attorney, Fletcher Smith. Smith subsequently withdrew as counsel and All was appointed. Pride failed to appear for two scheduled appointments with All. All sent letters to Pride indicating the date of trial and that he could not adequately represent Pride without speaking to him. Pride scheduled another appointment, which he again failed to appear for and offered no explanation. Eventually when Pride and All met, Pride indicated Smith was again representing him. However, when All contacted Smith's office, the administrative assistant indicated that Smith did not represent Pride. On the morning of the trial Pride did not appear, and Smith's office informed the solicitor that Smith did not represent Pride. The solicitor moved to have Pride tried in absentia, and All was relieved as counsel. The judge specifically found Pride waived his right to counsel by conduct and Pride was then tried and convicted for the drug offenses. When Pride eventually appeared before the judge for sentencing, All appeared at the hearing and indicated he could "perfect an appeal for [Pride] if he wants to raise the issue of whether or not he shouldn't have been tried in his absence." The judge imposed his sentencing.

On appeal, Pride argued the circuit court erred in relieving All as his counsel and proceeding with the trial in his absence, contending that his conduct was insufficient to establish that he waived his right to counsel. This court acknowledged the significance of *Thompson* and *Roberson* as it applied to Pride's case but found a "crucial difference" between the facts in his case and those of Thompson and Roberson. The defendants in both *Thompson* and *Roberson* were not represented by counsel until the sentencing hearing. This court concluded if it were to find the defendants in *Thompson* and *Roberson* waived their right to counsel it would be based solely on their failure to appear for trial. On the other hand, Pride not only failed to appear for trial, but he was afforded a public defender whom he failed to cooperate with prior to his trial. He was also given additional time to prepare for the trial, failed to

appear for his scheduled appointments with the public defender and failed to offer any assistance in preparation for his defense. Further, he gave assurances to the public defender, up to the day before his trial, that a private attorney would represent him, yet was aware that this private attorney was relieved as counsel. Based on Pride's actions, this court found that it was not only Pride's failure to appear for trial but also "Pride's deliberate and dilatory conduct [which were] sufficient to waive his right to counsel." *State v. Pride*, 372 S.C. 443, 641 S.E.2d 921 (2007) (Shearouse Adv. Sh. No. 7 at 69).

In this case, just as in *Pride*, Fairey was originally represented by counsel, and it was because of his own conduct and failure to cooperate with his counsel that he failed to be represented at the time of his trial. Fairey hired private counsel, Weldon, and had ample opportunities to meet with him and discuss the case. At some point in his representation, Fairey had a disagreement with Weldon as to the fundamental representation and trial strategies and failed to pay Weldon for his services even after a "reasonable warning" that Weldon would withdraw. Finally, Fairey desired to represent himself *pro se* and signed a consent form agreeing to relieve Weldon.

From the date the court granted Weldon's motion to be relieved, Fairey was aware of his duties and obligation as a *pro se* litigant and was alternatively instructed to hire counsel. Fairey failed to hire another attorney and proceeded to represent himself. Fairey was aware of his obligations and seemed knowledgeable about the legal system, as he maintained contact with the court and solicitor, made two requests to produce to the solicitor and filed various *pro se* motions. Further, his statements and conduct during proceedings reflected a familiarity with the workings of the legal system and the options legally available to him. The circuit court found:

> [Fairey] had been acting as his attorney for some time, making erudite motions and other things. It's not like we had some ignorant person here that didn't know anything, we had a very intelligent person here acting as his own attorney. And asking that notices be sent to him and not his attorney. To be sent to him. He knew he was acting as his attorney.

Yet, during that period, Fairey also engaged in delay tactics. He moved throughout the country, making service and notice difficult for the solicitor. In the instances the solicitor was able to track Fairey's whereabouts and serve notice, Fairey made motions to continue, based on the inconvenience of appearing in South Carolina on the noticed dates. The solicitor agreed to Fairey's motions and continuances were granted. When the solicitor sent Fairey a certified copy of his indictment, a consent order for a personal recognizance bond and an acknowledgement for the receipt of the indictment, Fairey failed to sign and return any of the items. Fairey's tactics further delayed the case and required the aforementioned items be addressed at a later hearing in March 2003. Based on Fairey's actions, we find Fairey engaged in deliberate and dilatory conduct sufficient to waive his right to counsel.

## III.   Grand Jury Documents

■    Fairey argues the trial court erred by refusing to grant his request for grand jury documents to prepare for his defense. We disagree.

In Fairey's written motion to quash and at the hearing on the motion, Fairey claimed the solicitor failed to comply with his discovery requests for documents memorializing the grand jury proceeding in his case. Fairey contended that documents relating to his previously dismissed case should have been expunged and therefore not reviewed by the grand jury. In his March 31, 2003 order the judge denied Fairey's motion to quash finding that Fairey's reliance on the expungement statute was misplaced and that the failure to comply with discovery requests was not remedied through the quashing of an indictment. Fairey failed to challenge either ruling and therefore they are the law of the case. *State v. Sampson,* 317 S.C. 423, 427, 454 S.E.2d 721, 723 (Ct.App.1995) (holding that an unchallenged ruling, right or wrong, is the law of the case); *Sims v. Hall,* 357 S.C. 288, 293 n. 2, 592 S.E.2d 315, 318 n. 2 (Ct.App.2003) (finding an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).

## CONCLUSION

Accordingly, Fairey's conviction and sentence are **AFFIRMED.**

BEATTY, and WILLIAMS, JJ. concur.