THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Herbert Lee
 Bell, Appellant.
 
 
 

Appeal From Sumter County
Clifton Newman, Circuit Court Judge
Unpublished Opinion No. 2008-UP-249
Submitted May 1, 2008  Filed May 7, 2008
AFFIRMED

 
 
 
 Appellate
 Defender Lanelle C. Durant, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior
 Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor
 C. Kelly Jackson, of Sumter, for Respondent.
 
 
 

PER CURIAM:  Herbert Lee Bell (Bell) appeals his
 conviction of trafficking in crack cocaine in an amount of more than two
 hundred grams but less than four hundred grams.  We affirm.[1]
FACTS
In
 late 2003, police obtained information about possible illegal drug activity in
 a trailer at 5595 Panola Road (5595) in Pinewood, in Sumter County.  Based on this information, the police sent a confidential informant wearing a wire to
 5595 on November 12 to purchase drugs.  The informant purchased a quantity of
 crack cocaine (crack) from Reggie Robinson (Robinson).  The next day, an
 informant returned to 5595 and purchased another quantity of crack from
 Alexander Lewis (Lewis).  On November 20, the informant made another purchase
 of crack in 5595 from Robinson.  On November 25, the informant purchased more
 crack inside 5595 from Robinson.  
As
 a result of their investigation and the prior buys, the police obtained a
 search warrant for 5595 on November 26.  Before the warrant was executed, the
 police sent the informant back on December 4 to confirm the presence of drugs. 
 The informant went to 5595 in the morning, but there was no answer at the
 door.  The informant returned to the car where the police were waiting.  As
 they drove off down the road, Lewis walked out of another residence across the
 street at 5650 Panola Road (5650).  The informant got out of the car and
 talked with Lewis on the driveway of 5595.  Lewis told the informant to return
 at another time.  The informant returned to 5595 around eleven oclock, but
 again nobody was home.  Lewis came out of 5650 and told him to return at two
 oclock.  Around two oclock, the informant returned and purchased crack inside
 5595 from Lewis.  
A
 few hours later, the police executed the search warrant for 5595.  Lewis was
 seized inside the trailer and Robinson was apprehended as he tried to flee out
 the back door.  The police subsequently set up a reverse-sting and arrested
 numerous individuals who came to 5595 to purchase drugs.  They soon ran out of
 space to park the buyers cars, so they ceased the operation.  
During
 the search of 5595, the police found a chair by the window near the door. 
 There was a small sliding match box on the window sill with crack inside.  A
 walkie-talkie was near the chair.  An aspirin bottle with crack and a jar of
 crack were seized in a bedroom.  There was a marijuana pipe in the bedroom with
 trace amounts of crack in it.  The total weight of the crack from 5595 was
 74.32 grams.  There was no furniture in the trailer other than the chair near
 the door and a mattress on the floor of the bedroom.  The bathroom was not
 functional.  Officer Angela Barger testified the trailer doesnt look like
 its actually a lived in residence.  It just appears to be used solely for the
 purpose of narcotics.  An electric bill under the name Racheka Michelle Bell
 was found in the kitchen.  An appointment card and a medical receipt for Lewis
 were found in the kitchen.  A cash ticket for Bell from a furniture store for a
 roll-away bed was also found in the kitchen.
While
 the police were at 5595, other officers proceeded to 5650 to investigate.  Bell answered the door.  He agreed to accompany them across the street to 5595.  The
 police subsequently obtained a search warrant for 5650.
Pursuant
 to the search of 5650, the police seized a chair by the window in the living
 room with a clear view of 5595.  There was no other furniture inside except for
 a television and a video game system.  They found a scanner, binoculars, and a
 walkie-talkie nearby.  The kitchen had no dishes, food, or anything which
 indicated somebody lived in the residence.  The police discovered a half-gallon
 mason jar in the dishwasher in the kitchen, one third to one half full of
 crack.  The jar contained 227.03 grams of crack.  There were also assorted
 glassware and paraphernalia inside the dishwasher used to make crack.  There
 was crack residue on the items.  The walkie-talkies at 5650 and 5595 were set
 to the same channel.  The police found an insurance card for Bell in a drawer
 in the kitchen.  An application for pretrial intervention for Robinson was also
 inside the drawer.  Rental agreements for 5595 to Alexander Lewis and for 5650
 to Michael Lewis, dated November 1, 2003, were found in the living room.  An
 electric bill to Michael Lewis was found in a bedroom.  The mason jar found in
 5650 was dusted for fingerprints.  Robinson and Bells fingerprints were found
 on it.  
Bell was served with arrest warrants for manufacturing
 crack and trafficking in crack on December 5, 2003.  Bell was released on a
 $70,000 surety bond, and he signed a bond sheet wherein under the heading
 ACKNOWLEDGEMENT BY THE DEFENDANT, it indicates: I understand and have been
 informed that I have a right and obligation to be present at trial, and should
 I fail to attend the court, the trial will proceed in my absence.  
On
 February 19, 2004, the Sumter County Grand Jury indicted Bell on trafficking in
 crack cocaine in an amount of more than twenty-eight grams but less than one
 hundred grams and for trafficking in crack cocaine more than two hundred grams
 but less than four hundred grams.  On March 7, 2006, circuit court Judge
 Clifton Newman proceeded to trial with a jury against Bell on the trafficking
 charge of more than two hundred grams but less than four hundred grams.  Bells attorney was present and ready for trial, but Bell was not in attendance at the
 trial.  The bailiff called his name from the courthouse step three times, but Bell did not respond and present himself for trial.  The two-day trial proceeded in Bells absence.
Detective
 Allen Dailey explained the amount of crack seized from the mason jar in 5650
 is solely something you would find with a seller, its quite a bit of money. 
 Dailey testified the crack was freshly cut for sale.  Deputy Trevor Brown
 testified the police hardly ever find that much crack at one location.  Brown
 further said it was not uncommon for drug dealers to store drugs at one
 location and then sell them from another location.
Mack
 McLeod testified he owned both properties.  He recalled that shortly before Bells arrest, Bell wanted to purchase 5650.  He paid rent in cash for it in November. 
 McLeod said 5595 was rented out by his father (since deceased), but he thought
 Lewis rented it.  
Alexander
 Lewis testified for the State.  Lewis testified he moved to 5595 with Bell, who is his nephew.  He stated Bell paid the rent.  Lewis said his brother Michael
 and Robinson also stayed with them on occasion.  Lewis testified he sold drugs from
 the trailer.  Lewis said the crack was kept in the jar seized by the police. 
 Lewis claimed he would go through a jar of crack sometimes two times a day. 
 Lewis testified he got the crack from Bell and sold it for him.  In return,
 Lewis got crack for his personal use.  Lewis said Bell produced the crack in
 5595 and 5650.  He stated that Bell had moved to 5650.
Robinson
 also testified for the State.  Robinson said he stayed at 5595 off and on. 
 He and Bell were longtime friends.  Robinson testified Bell paid the rent and
 was there all the time.  He said Alexander and Michael Lewis also stayed
 there.  Robinson said he sold drugs from 5595 for Bell.  Robinson testified Bell provided the crack and put it in the jars to sell.  He said a jar of crack would last
 about a week, two weeks.  Robinson gave Bell the money from the sales. 
 Robinson also testified Bell produced the crack in 5595 and 5650 and they used
 the walkie-talkies to communicate between the residences.  
The
 jury found Bell guilty, and Judge Newman issued a sentence but sealed it until Bell was present.  On June 7, 2006, Judge Steven H. John unsealed the sentence in Bells presence and sentenced Bell to twenty-five years and a fine of $100,000.  Bells attorney filed a notice of appeal on June 8, 2006.
ISSUES

 
 
 1. 
 Did the trial court err in proceeding with Bells 
 trial in his absence?
 
 
 
 2. 
 Did the trial court err in not granting a mistrial 
 when the State failed to provide their experts fingerprint report?
 
 

STANDARD OF REVIEW
In
 criminal cases, the appellate court sits to review errors of law only. State
 v. Butler, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct. App. 2003).  We are
 bound by the trial court's factual findings unless they are clearly erroneous.  Id. at 388, 577 S.E.2d at 500-01. 
On
 review, we are limited to determining whether the trial judge abused his
 discretion.  State v. Reed, 332 S.C. 35, 503 S.E.2d 747 (1998); State
 v. Patterson, 367 S.C. 219, 224, 625 S.E.2d 239, 241-242 (Ct. App. 2006).  An
 abuse of discretion occurs when the trial courts ruling is based on an error
 of law.  State v. McDonald, 343 S.C. 319, 540 S.E.2d 464 (2000); State
 v. Adams, 354 S.C. 361, 580 S.E.2d 785 (Ct. App. 2003).  In order for an
 error to warrant reversal, the error must result in prejudice to the appellant.  See State v. Beck, 342 S.C. 129, 536 S.E.2d 679 (2000); see
 also State v. Wyatt, 317 S.C. 370, 453 S.E.2d 890 (1995).
DISCUSSION
I.  Trial in absentia
Bell argues the trial court erred by proceeding with his
 trial in his absence because he alleges the State failed to prove he had notice
 that his trial would proceed in his absence.  We disagree.
Bell signed a bond sheet on December 5, 2003, wherein
 under the heading ACKNOWLEDGEMENT BY THE DEFENDANT, it indicates: I
 understand and have been informed that I have a right and obligation to be
 present at trial, and should I fail to attend the court, the trial will proceed
 in my absence.  
At
 trial, defense counsel admitted Bell was informed the Friday before that the
 case was going to be tried.  He did not know where Bell was at the time of the
 trial.  Defense counsel then attempted to explain Bells failure to appear.  He
 noted Bell had been given prior notices of trial and he appeared for trial and
 roll call during several terms of court during the past two years.  He surmised
 there were no assurances it would be different this time.  He stated how much
 assurance can an individual know that their case is actually going to trial if
 they have been told 2 or 3 times in the past that its going for trial.  They
 show up, and it doesnt.  So its like crying wolf . . . .  Defense counsel
 also said Bell had to work and Bell recently told him that he may take a job in
 New Orleans.
Bells name was then called three times from the
 courthouse steps, but he did not respond.  Bell was thereafter tried in his
 absence.  
To
 preserve an issue for review there must be a contemporaneous objection that is
 ruled upon by the trial judge.  State v. Johnson, 324 S.C. 38, 476
 S.E.2d 681, 682 (1996).  The objection should be addressed to the trial judge
 in a sufficiently specific manner that brings attention to the exact error.  State
 v. Prioleau, 345 S.C. 404, 548 S.E.2d 213, 216 (2001); State v.
 Funderburk, 367 S.C. 236, 625 S.E.2d 248, 250 (Ct. App. 2006).  If a party
 fails to properly object, the party is procedurally barred from raising the
 issue on appeal.  State v. Pauling, 322 S.C. 95, 470 S.E.2d 106, 109
 (1996); see State v. Benton, 338 S.C. 151, 526 S.E.2d 228 (2000) (party
 may not argue one ground at trial and an alternative ground on appeal); State
 v. Hoffman, 312 S.C. 386, 440 S.E.2d 869 (1994) (to preserve error for
 appeallate review, a defendant must make a contemporaneous objection on a
 specific ground); McKissick v. J.F. Cleckley & Co., 325 S.C. 327,
 479 S.E.2d 67, 76 (Ct. App. 1996) (noting the appellant failed to point to
 specific objections and rulings as required by the South Carolina Appellate
 Court Rules, thus leaving the court to grope in the dark concerning the
 specific allegations of error); see also State v. Bray, 342 S.C.
 23, 535 S.E.2d 636 (2000) (it is error for an appellate court to consider
 issues not raised to it).
Although
 Bells counsel objected to the trial in Bells absence, he did not
 specifically object on the ground that Bell was not adequately warned the trial
 would proceed in his absence if he failed to appear.  Instead, defense counsel
 merely attempted to mitigate Bells failure to appear, although he admitted Bell had notice of the trial.  Because there was no objection to the trial in Bells absence on the ground alleged on appeal, the issue is not preserved for appellate
 review.
Bells argument also fails on the merits.  Although the
 Sixth Amendment of the United States Constitution guarantees the right of an
 accused to be present at every stage of his trial, this right may be waived.  State
 v. Bell, 293 S.C. 391, 360 S.E.2d 706, 711 (1987); Ellis v. State,
 267 S.C. 257, 227 S.E.2d 304, 605 (1976).  Rule 16 of the South Carolina Rules
 of Criminal Procedure provides:

 [A]
 person indicted for misdemeanors and/or felonies may voluntarily waive his
 right to be present and may be tried in his absence upon a finding by the court
 that such person has received notice of his right to be present and that a
 warning was given that the trial would proceed in his absence upon a failure to
 attend the court.

However,
 a waiver of such an important right is permitted only in limited
 circumstances.  Aiken v. Koontz, 368 S.C. 542, 629 S.E.2d 686, 689 (Ct. App. 2006).  Therefore, before a defendant may be tried in absentia, the trial judge
 must determine a defendant voluntarily waived his right to be present at trial,
 making findings of fact on the record the defendant (1) received notice of his
 right to be present and (2) was warned the trial would proceed in his absence.  Id.
It
 is well-settled a bond form that provides notice that a defendant can be tried
 in absentia may serve as the requisite notice.  State v. Goode, 299 S.C.
 479, 385 S.E.2d 844, 846 (1989); State v. Fairey, 374 S.C. 92, 646
 S.E.2d 445, 449-50 (Ct. App. 2007); Koontz, 629 S.E.2d at 689-90.
In Koontz, the defendant was arrested for driving with a suspended license,
 and when he posted bond the day after arrest, he was provided an order
 specifying methods and conditions of release.  Id., 629 S.E.2d at 689.  
 The defendant also signed a form entitled Acknowledgment by Defendant, which
 read I understand and have been informed that I have a right and obligation to
 be present at trial and should I fail to attend the court, the trial will
 proceed in my absence.  Id.  Thus, this Court held Koontz was warned a
 failure to appear would result in a trial in his absence and he understood the
 warning and obligation by signing the acknowledgment.  
In Fairy, the defendant signed a similar bond sheet in 1998.  His original
 indictment was dismissed, but he was indicted for the same crime in 2001, and
 the 1998 bond was reinstated in 2002 by court order.  This Court held the 1998
 bond was in effect and thereby served as notice to the defendant that he would
 be tried in his absence if he failed to appear.
In
 the present case, Bell admits he signed the bond two years before his trial and
 shortly after his arrest.  Bell contends he did not know whether he was going
 to have a trial, because the case was called for trial several times before
 and it did not go to trial.  Bell argues he appeared at prior times and his
 having to appear at every term of court interfered with his ability to hold a
 steady job.  Bell notes defense counsel did not state that he informed him the
 trial would proceed without him.  Bell states there was no evidence he read the
 bond form when he signed it or even that he could read.  His arguments are
 without merit.  
Notwithstanding
 the outcome of the prior roll calls in this case, Bell appeared as required. 
 Clearly, he demonstrated knowledge of his obligation to appear under the terms
 of the bond.  Bells decision on this particular occasion to ignore the notice
 of trial, simply because he thought the outcome would be similar, does not
 excuse his failure to appear.  As in Fairey and Koontz, Bells signature on the acknowledgment served as a warning he would be tried in his absence
 if and when his case was called for trial and he failed to appear.  Bell clearly understood such a warning and waived his right to be present.  Bells other arguments go to the credibility of the evidence.  The trial judges findings
 were supported by the record and should not be disturbed.  
II.  States
 fingerprint expert
Bell argues the trial court erred in not granting a
 mistrial when the State failed to provide the fingerprint report.  Bell contends he was prejudiced because he was unable to cross-examine the expert
 thoroughly or appropriately without the report and the defense did not have the
 opportunity to hire its own expert to examine the report.  We disagree.  
SLED
 Agent Edward Porter was qualified as an expert in fingerprint analysis and
 comparison.  Porter testified he received the backers from the mason jar.  At
 this point, defense counsel requested a brief side bar, and counsel conferred
 with the trial judge.  Porter then testified he compared the fingerprints
 lifted from the mason jar with known fingerprints of Bell, Robinson, and
 Lewis.  Porter was able to match one of Bells fingerprints on the jar and two
 of Robinsons fingerprints.  On cross-examination, Porter testified he sent a
 report of his findings to law enforcement.
After
 the State rested its case four witnesses later, defense counsel requested a
 mistrial.  He argued he had not previously received the report despite his
 pretrial discovery request.  Defense counsel said Bell was prejudiced by not
 having the report, because counsel could not use it in cross-examination and he
 did not have the opportunity to hire an expert to examine the report.  
The
 trial judge denied the mistrial.  He initially noted that although we had a
 side bar, there was no objection to Porters testimony.  The trial judge
 further determined the failure to turn over the report was harmless because the
 defense was not surprised.  He noted defense counsel made a pretrial motion to
 suppress testimony about fingerprints.  
This
 issue is not properly preserved.  To preserve an issue for appellate review, a
 contemporaneous objection must be made when the evidence is offered.  See State v. Mitchell, 330 S.C. 189, 498 S.E.2d 642, 644 n.3 (1998) (Unless
 an objection is made at the time the evidence is offered and a final ruling
 made, the issue is not preserved for review.); State v. Johnson, 324
 S.C. 38, 41, 476 S.E.2d 681, 682 (1996) (Appellant made no contemporaneous
 objection at trial and did not raise this issue at any point during trial. 
 Consequently, this issue is not preserved for review.).  It well-settled a
 failure to contemporaneously object to the introduction of evidence claimed to
 be prejudicial cannot be later bootstrapped by a motion for a mistrial.  State
 v. Lynn, 277 S.C. 222, 284 S.E.2d 786 (1981); State v. Moultrie, 316
 S.C. 547, 451 S.E.2d 34 (Ct. App. 1994); State v. Wilkins, 310 S.C. 81,
 425 S.E.2d 68 (Ct. App. 1992); see also State v. Curtis, 356 S.C.
 622, 591 S.E.2d 600 (2004) (a contemporaneous objection is required to preserve
 error for appellate review); State v. Atchison, 268 S.C. 588, 235 S.E.2d
 294 (1977) (if a party fails to make a proper contemporaneous objection to the
 admission of evidence, he cannot later raise the issue by a motion for a
 mistrial).  
Although
 Bell requested a side bar during the testimony of the States fingerprint
 expert, the trial judge clearly noted there was no objection made at the time
 of the admission of the fingerprint evidence.  An objection was not made until
 the close of the States case four witnesses later when Bell moved for a
 mistrial.  Bells objection was untimely.  
Assuming
 arguendo that defense counsel timely objected to the States fingerprint expert
 off-the-record, he was nevertheless required to immediately set forth the
 ground for the objection on the record to preserve it for appellate review. 
 His failure to do so here precludes review.  See York v. Conway Ford,
 Inc., 325 S.C. 170, 480 S.E.2d 726, 728 (1997) (an objection made in an
 off-the-record conference but not placed on the record does not preserve the
 issue for appellate review); Hundley v. Rite Aid of S.C., Inc., 339 S.C.
 285, 529 S.E.2d 45, 57 (Ct. App. 2000) (motions must be made on the record to
 be preserved for review by an appellate court).
In
 any event, Bells argument is without merit.  The power of a court to declare
 a mistrial ought to be used with the greatest caution under urgent
 circumstances, and for very plain and obvious causes stated into the record by
 the trial judge.  State v. Simmons, 352 S.C. 342, 573 S.E.2d 856, 862 (Ct. App. 2002); see also State v. Patterson, 337 S.C. 215, 522 S.E.2d 845 (Ct. App. 1999) (a mistrial should only be granted in cases of manifest necessity and with
 the greatest caution for very plain and obvious reasons).  The granting of a
 motion for a mistrial is an extreme measure which should be taken only where an
 incident is so grievous the prejudicial effect can be removed in no other way.  State v. Beckham, 334 S.C. 302, 513 S.E.2d 606 (1999); State v. Adams,
 354 S.C. 361, 580 S.E.2d 785, 793 (Ct. App. 2003).
A
 mistrial should only be granted when absolutely necessary, and a defendant
 must show both error and resulting prejudice in order to be entitled to a
 mistrial.  Simmons, 573 S.E.2d at 862; see also State v.
 Council, 335 S.C. 1, 515 S.E.2d 508 (1999) (a mistrial should not be
 granted unless absolutely necessary; to receive a mistrial, a defendant must
 show error and resulting prejudice).  The less than lucid test is therefore
 declared to be whether the mistrial was dictated by manifest necessity or the
 ends of public justice.  State v. Prince, 279 S.C. 30, 301 S.E.2d 471,
 472 (1983).  Whether a mistrial is manifestly necessary is a fact specific
 inquiry.  State v. Rowlands, 343 S.C. 454, 539 S.E.2d 717, 719 (Ct. App. 2000).
The
 decision to grant or deny a mistrial is within the sound discretion of the
 trial judge.  State v. Thompson, 352 S.C. 552, 575 S.E.2d 77 (Ct. App. 2003).  The trial judges decision will not be overturned on appeal absent an
 abuse of discretion amounting to an error of law.  State v. Harris, 340
 S.C. 59, 530 S.E.2d 626 (2000); State v. Kelsey, 331 S.C. 50, 502 S.E.2d
 63 (1998); see also State v. Arnold, 266 S.C. 153, 157, 221
 S.E.2d 867, 868 (1976) (the general rule of this state is that the ordering
 of, or refusal of a motion for mistrial is within the discretion of the trial
 judge and such discretion will not be overturned in the absence of abuse thereof
 amounting to an error of law).  
Rule
 5 of the South Carolina Rules of Criminal Procedure governs the disclosure of
 evidence in criminal cases.  Applicable in this case are those provisions of
 Rule 5 which require the disclosure of certain documents, tangible objects, and
 reports of examinations and tests, that are within the possession, custody or
 control of the prosecution, and which are material to the preparation of the
 defendants defense or are intended for use by the prosecution as evidence in
 its case-in-chief.  Rules 5(a)(1)(C) & (a)(1)(D), SCRCrimP.  Evidence is
 deemed material only if there is a reasonable probability that, had the
 evidence been disclosed to the defense, the result of the proceeding would have
 been different.  State v. Von Dohlen, 322 S.C. 234, 471 S.E.2d 689, 693
 (1996); see also State v. Kennerly, 331 S.C. 442, 503 S.E.2d 214,
 220 (Ct. App. 1998) (definition of material for purposes of Rule 5 is the
 same as definition used in the Brady context), affd, 337 S.C.
 617, 524 S.E.2d 837 (1999).  Any omission must be evaluated in the context of
 the entire record.  State v. Wilkins, 310 S.C. 81, 425 S.E.2d 68, 70 (Ct. App. 1992).  Absent a showing of prejudice suffered by the defendant, such that he is
 deprived of a fair trial, reversal is not required.  State v. Trotter,
 322 S.C. 537, 473 S.E.2d 452 (1996).
Even
 if the State failed to comply with Bells Rule 5 request, the trial judge had
 the discretion to provide a proper remedy.  The exercise of this discretion
 will not be disturbed on appeal absent an abuse of discretion.  State v.
 Scipio, 283 S.C. 124, 322 S.E.2d 15 (1984); State v. Davis, 309 S.C.
 56, 419 S.E.2d 820 (Ct. App. 1992).  It is well-settled that if a party fails
 to comply with the rule, the court may order such party to permit the
 discovery or inspection, grant a continuance, or prohibit the party from
 introducing evidence not disclosed, or it may enter such other order as it
 deems just under the circumstances.  Rule 5(d)(2); see State v. Salisbury, 330 S.C. 250, 498 S.E.2d 655 (Ct. App. 1998), affd as modified, 343
 S.C. 520, 541 S.E.2d 247 (2001).
However,
 this Court need not determine here whether the report in question should have
 been disclosed, since the trial judge properly determined Bell showed no
 prejudice.  The record clearly shows defense counsel was aware of the
 fingerprint evidence, as indicated by his pretrial motion to suppress it as the
 fruit of an illegal arrest.  At no time, however, did the defense request a
 continuance or a recess to review the written report or to obtain other experts
 to refute the findings once it was disclosed.  See State v. Davis,
 309 S.C. 56, 419 S.E.2d 820 (Ct. App. 1992) (trial judges denial of the suppression
 of defendants oral statements because the statements were not disclosed in a
 timely manner was upheld where the defendant did not request a continuance or
 recess to review the prosecutions file); see also State v. Mitchell,
 330 S.C. 189, 498 S.E.2d 642 (1998) (issue not preserved when defense counsel
 indicated he might need a recess but never actually requested one).  Defense
 counsel was further able to thoroughly cross-examine the States fingerprint
 expert.  Bell has failed to demonstrate there is a reasonable probability the
 result would have been different had the report been disclosed to him earlier. 
 There was no prejudice and Bell was not deprived of a fair trial.  There was no
 abuse of discretion in the denial of a mistrial motion.  Davis, 419
 S.E.2d at 825; see State v. Thompson, 276 S.C. 616, 281 S.E.2d
 216 (1981) (the States failure to disclose does not warrant reversal unless
 the defendant is deprived of a fair trial).
CONCLUSION
The
 trial court did not err in proceeding with Bells trial in his absence and in
 not granting a mistrial when the state failed to provide their experts
 fingerprint report.  Accordingly, the order of the circuit court is
AFFIRMED.
ANDERSON,
 HUFF and KITTREDGE, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.